# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MICHELLE MARIE VITEK DEVINE,        )<br>    Plaintiff,        )<br>        )<br>    v.        )<br>        )<br>NANCY A. BERRYHILL,        )<br>Acting Commissioner of the        )<br>Social Security Administration,        )<br>    Defendant.        ) | CAUSE NO.: 2:17-CV-14-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Michelle Marie Vitek Devine on January 12, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], filed by Plaintiff on June 15, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 18, 2017, the Commissioner filed a response, and on August 31, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## I.    Background

On March 26, 2012, Plaintiff filed an application for benefits alleging that she became disabled on June 30, 2010. Plaintiff's application was denied initially and upon reconsideration. After a hearing on May 31, 2013, Administrative Law Judge ("ALJ") Edward Studzinski issued a decision on September 27, 2013, finding that Plaintiff was not disabled. On December 19, 2014, the Appeals Council remanded the case to the ALJ for further proceedings. He held a second hearing on May 15, 2015, at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On December 9, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

1

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since July 2, 2010, the alleged onset date.

3. The claimant has severe impairments: degenerative disc disease causing back pain, tenosynovitis of the right ankle requiring surgery to place external fixator and thereafter to remove the hardware, subsequent ankle/foot surgeries leading to chronic right ankle pain, depression, bipolar disorder, anxiety, post-traumatic stress disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). However, claimant can lift and/or carry up to 10 pounds occasionally and lighter weights frequently. She has no limitations in the total amount of time she is able to sit throughout an 8 hour workday. She can stand or walk for no longer than 10 minutes at any one time, and for a total of no more than two out of eight hours. The claimant needs to alternate her position such that she stands and/or walks for no more than five minutes after sitting for one hour. While doing so, she would not need to be off task. The claimant can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. In addition, the claimant is further limited to simple, routine and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to her primary job duties. She is not to work in crowded or hectic environments. She can tolerate brief and superficial interaction with co-workers and supervisors as is common in unskilled work, but is not to perform teamwork or tandem tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-44 on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-59.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2010, through the date of the decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard or Review

The Social Security Act authorizes judicial review of the final decision of the Social Security Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review.*" Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also*

4

*O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.  Analysis

Plaintiff argues that the ALJ erred in his analysis of the opinion of Plaintiff's treating psychiatrist, erred in evaluating Plaintiff's residual functional capacity ("RFC"), and did not properly analyze her subjective allegations. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

### A.  Treating Psychiatrist

Plaintiff sought treatment for her major depressive disorder, panic attacks, and social anxiety, including multiple hospitalizations for suicidal ideation. Plaintiff's treating psychiatrist completed a questionnaire addressing Plaintiff's work-related limitations caused by her psychiatric symptoms. He opined that she has marked limitations in a number of work-related abilities, has difficulties interacting with other people and performing under the circumstances of a job, and is incapable of tolerating even low work stress, and that her psychiatric conditions exacerbate her physical symptoms. In addition, he opined that she would likely be absent from work more than three times per month because of her impairments or treatment. In this case, the ALJ stated that she gave "little weight" to the opinion of the treating psychiatrist on the ground that it was not supported by the record as a whole. Plaintiff argues that the ALJ erred in failing to give controlling weight to the treating psychiatrist's opinions regarding Plaintiff's ability to work. The Commissioner argues that the ALJ properly considered his opinion.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

In this case, the ALJ's finding of inconsistency is riddled with contradiction. He stated, "[O]ther than an anxious demeanor, the claimant was alert, oriented, and was able to communicate in a normal fashion," and,"While the record indicates that the claimant was briefly hospitalized in May of 2012 and February 2015 due to suicidal ideation, the claimant has for the most part managed her symptoms through the use of prescription medication, . . . but [the psychiatrist]'s assessment s consistent with an individual who needs to be hospitalized on an ongoing basis, which is a finding that is not supported by the record." The Court is unable to trace the logic of the ALJ's reasoning. It appears that the ALJ concluded, on his own, that a person with the limitations described in the questionnaire would need to be hospitalized, and used that conclusion as a reason to discount the psychiatrist's opinion since, although Plaintiff has been hospitalized, she is not permanently institutionalized, and he doubted the psychiatrist's assessment of Plaintiff's anxiety because she able to communicate – conclusions that are at least illogical and raise the concern that the ALJ is

6

impermissibly playing doctor. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (warning that ALJs "must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong").

The ALJ ignored treatment notes from other physicians that support the treating psychiatrist's statements, and his reliance on a few treatment notes to invalidate the rest of the psychiatrist's opinion is concerning. The Seventh Circuit Court of Appeals has warned against such "cherry-picking" of mental health evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). As the Seventh Circuit Court has explained, "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)*; see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

Because the ALJ failed to give controlling weight to Plaintiff's treating psychiatrist, he was required to analyze the following factors to describe what weight to give their opinions: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the

7

physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Punzio*, 630 F.3d at 710 ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."). The ALJ failed to address these factors, and failed to identify any treating or examining physicians whose opinions as to Plaintiff's mental limitations were given any weight. The Court is left unable to trace a path from the medical evidence in the record to the ALJ's conclusions about the Plaintiff's ability to work. On remand, the ALJ must thoroughly address the evidence of Plaintiff's mental limitations, and is reminded of his responsibility to develop the record, which may include ordering additional examinations or contacting medical sources to obtain records and evidence necessary to making the determination. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b).

B. <u>Subjective Complaints</u>

Plaintiff argues that the ALJ also failed in properly weigh Plaintiff's testimony about her own limitations and experiences of pain. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of a number of other factors relating to "functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the

claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p, in effect at the time of the ALJ's opinion, provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996).

The ALJ's treatment of Plaintiff's daily activities and use of her unsuccessful attempt to hold down a part-time job are concerning. Attempting to work after the onset of disability does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."); *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate person might force herself to work – or . . . certify that she is able to work – but that does not necessarily mean she is not disabled."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). On remand, the ALJ should address Plaintiff's inability to hold down a part time job, and explain how the RFC accounts for the specific difficulties she had in that position.

Similarly, the ALJ disbelieved Plaintiff's statements that she was unable to work based, in part, on her "rather full daily activities." AR 30. The ALJ did not reconcile this finding with his

9

notes that Plaintiff needs assistance with bathing and reminders to take her medication, nor did he recognize the difference between working and performing simple activities of daily living. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work."). On remand, the ALJ is directed to thoroughly analyze the limitations on Plaintiff's activities of daily living and explain how he incorporated those limitations into the RFC.

The ALJ also noted several times that Plaintiff pursued limited treatment or that there were gaps in the medical record which he assumed were lapses in treatment, without at all addressing any reasons Plaintiff might have had for those perceived gaps. *See* SSR 96-7p at *7; *Shauger*, 675 F.3d

at 696 ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). That failure is particularly concerning given Plaintiff's documented mental illnesses. *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment."); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases).

### C. Residual Functional Capacity

Plaintiff argues that the ALJ erred in explaining how he incorporated all of Plaintiff's limitations into the RFC. The Commissioner argues that substantial evidence supports the RFC finding.

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fourth step addresses whether the claimant is capable of doing her past relevant work, and, if not, the fifth step is for the ALJ to determine whether the claimant is able to perform other work given her RFC. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations," *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001), and should be based on evidence in the record. *Craft*, 539 F.3d at 676 (citing

11

20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Although the ALJ need not specifically include every limitation alleged by Plaintiff in the RFC, she must explain how she incorporated all of symptoms and limitations into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996)); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). When an ALJ relies on testimony from a VE to make a disability determination at step four or five, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

Plaintiff argues that the ALJ also failed to consider the combination of Plaintiff's impairments and to incorporate her obesity into the RFC. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even

those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski*, 322 F.3d at 918).

Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment, even if the obesity is not itself a severe impairment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Gentle*, 430 F.3d at 868 (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). However, Plaintiff's obesity is not even mentioned in the opinion and there is certainly no indication that the ALJ considered its effect on her ability to work, either alone or in combination with her numerous other impairments, in contravention of both the regulations and the explicit direction of the Appeals Council.

Plaintiff argues that the ALJ failed to explain how he accounted for several of Plaintiff's

other limitations in the RFC. For example, he indicated that Plaintiff might have memory loss and stated that the RFC accounts for it, but the RFC does not explicitly mention difficulties in remembering things, and there is no explanation of how the RFC takes into account Plaintiff's memory loss. Especially since the ALJ did not give weight to the opinions of any treating or examining mental health professionals in the record but found that Plaintiff had more limitations than those described by the agency consulting physicians, there is no logical bridge for the Court to follow from the evidence to the RFC. Likewise, the ALJ rejected Plaintiff's testimony that she needed to elevate her legs and did not incorporate it into the RFC, apparently ignoring or disregarding the medical evidence, acknowledged by the Commissioner in her brief, that Plaintiff's treating physician told her to elevate her leg. On remand, the ALJ must consider all of Plaintiff's impairments, even those that are not severe on their own, and address how they effect her ability to work, both individually and in combination, and must thoroughly explain how all of her limitations are incorporated into the RFC.

        D.      <u>Concentration, Persistence, and Pace</u>

Plaintiff argues that the ALJ failed to explain how he incorporated Plaintiff's moderate limitations in concentration, persistence, and pace into the RFC, so that the VE's testimony did not account for all of her limitations. In this case, the ALJ found that Plaintiff has moderate difficulties in concentration, persistence, and pace, but did not explain how these difficulties are taken into account, other that a brief statement that "the claimant has been provided appropriate limitations with the mental residual functional capacity herein" and that he "ha[s]accomodated her social concerns in the RFC." AR 28, 30. Furthermore, when a claimant experiences limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical

14

posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*

In this case the ALJ asked the VE about a hypothetical individual "limited to simple, routine, repetitive tasks; jobs involve no more than simple decision-making jobs that expose her to no more than occasional and minor changes in the work setting and jobs that require the exercise of no more than simple judgment." AR 81. He also included a limitation on interaction with other people to "brief and superficial interaction" with both the public and coworkers and supervisors. AR 81. There is no mention of the pace at which the person might be required to work or how long she would have to concentrate on a single task. A limitation to unskilled work is generally insufficient to account for moderate limitations in concentration, persistence, or pace because "[t]he ability to stick with a task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620-21 ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."); *see also Jelinek*, 662 F.3d at 813-14 (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by

15

restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *see also* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job."). The ALJ did not ask the VE about an individual who would be mentally off-task during the work day, but the VE did testify that having to pull away from a workstation to elevate one's leg "would equate to off-task time and an individual cannot be off task more than 15 percent of the work time and those chunks of off-task time cannot be for more than 5 or 10 minutes per chunk of time" without precluding work. AR 82-83. The ALJ failed to include any hypothetical that explicitly addressed difficulties in concentration, persistence, or pace, and the only testimony that addressed a limitation in concentration and persistence precluded Plaintiff from being able to work. The Court is unable to conclude that the ALJ appropriately found that Plaintiff is able to hold down a full time job.

The Court is also concerned with another component of the VE's testimony. The VE testified that Plaintiff would be able to perform work as an address clerk and an account clerk. The Seventh Circuit Court of Appeals has questioned the appropriateness of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published, and mainly moreover from information from 1977 – 37 years ago," noting that "[n]o doubt many of the jobs have changed and some have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). Additionally, the *Browning* court expressed concern, particularly relevant in this case, that "[t]here is no official source of

number of jobs for each job classification in the Dictionary of Occupational Titles . . . [a]nd many of the[ VEs] estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category." *Id*. at 708. That concern is particular relevant in this case, where one of the jobs described by the VE, that of addressing clerk, has as its job description, "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DOT 209.587-010. The job of hand- or typewriting addresses is one that seems particularly likely to have changed or disappeared in the last 37 years given the shift to computers and advances in printing technology. Likewise, the other job included in the ALJ's opinion is that of account clerk, someone who "Assists customer in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit." DOT 205.367-014. Again, the near-ubiquity of online banking makes it unlikely that these jobs exist as they did prior to the advent of the internet. However, as in *Browning*, in this case " the administrative law judge accepted without comment" the VE's claim "of the number of jobs . . . the plaintiff could perform that exist in the plaintiff's area." *Browning*, 766 F.3d at 709.

The ALJ failed to explain how all of Plaintiff's physical limitations, including her obesity and need to elevate her ankle, and her mental limitations, including her moderate limitations in concentration, persistence, and pace, memory loss, and her moderate difficulties with social functioning, were incorporated into the RFC. The ALJ also failed to adequately incorporate Plaintiff's limitations in her questions to the VE. On remand, the ALJ is instructed to fully review

17

all of the medical and mental health evidence in the record and to obtain updated information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p at *4; 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)). He is directed to follow the applicable regulations in determining what limitations Plaintiff experiences, and to fully explain how each of the limitations, alone and in combination, are incorporated into the RFC. In addition, the ALJ is directed to "include all of [Plaintiff's limitations] directly in the hypothetical," as that is "the most effective way to ensure that the VE is apprised fully of the claimant's limitations." *See O'Connor-Spinner*, 627 F.3d at 619. In addition, the Court recommends that the ALJ specifically ascertain the source of the VE's opinion that the jobs identified as those Plaintiff could perform do, in fact, actually exist in the regional economy in the current millennium. Given the fact that the ALJ has already been afforded an opportunity to address the errors in his opinion and has not done so, the Court suggests that Plaintiff's case be assigned to a different ALJ. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (recognizing that the Court does not have power "to order that a case decided by an administrative agency be sent back . . . to a different administrative law judge" but "urg[ing]it to transfer the case to a different administrative law judge" where "[t]he tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim").

**IV.　Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 26th day of February, 2018.

                                                                                 s/ John E. Martin
                                                        MAGISTRATE JUDGE JOHN E. MARTIN
                                                        UNITED STATES DISTRICT COURT

cc:     All counsel of record